IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROLANDO RUIZ, § | |
|     Petitioner, § | |
| § | |
| v. § | Civil Action no. SA:03-CA-303-OG |
| § | (District Judge Orlando L. Garcia) |
| RICK THALER, § | |
| Director, Texas Department of § | * DEATH PENALTY CASE * |
| Criminal Justice, Correctional § | |
| Institutions Division, § | ECF |
|     Respondent. § | |

**RESPONDENT THALER'S OBJECTIONS TO PETITIONER'S EXHIBITS
WITH BRIEF IN SUPPORT**

Petitioner Rolando Ruiz was convicted and sentenced to die by a Texas state court for capital murder. He now seeks relief pursuant to 28 U.S.C. § 2254. The Court has set an evidentiary hearing for November 2, 2010, to resolve Ruiz's claim that his counsel rendered ineffective assistance at the punishment phase of Ruiz's trial by failing to adequately investigate, develop, and present potentially mitigating evidence regarding Ruiz's background and mental health. *See* Order Setting Hr'g, Docket entry (D.E.) 94, at 2. The Court gave the parties until October 1, 2010, to file and serve opposing counsel with properly authenticated copies of any documents, records, or reports they wish the Court to consider in ruling on the merits of Ruiz's ineffective assistance claim, "i.e., any documents, records, or reports they intend to introduce into evidence at the evidentiary hearing." D.E. 94, at 3. Ruiz timely filed twenty-eight exhibits.

D.E. 117. For the reasons discussed below, the Director objects to all but three of these exhibits[1] and asks the Court to exclude them from its consideration.

## I. General Objection To Ruiz's Exhibits 1-14 and 18-27

In 2007, the Fifth Circuit Court of Appeals remanded Ruiz's case to this Court with instructions for it to adjudicate the merits of the ineffective-assistance claim at bar, as Ruiz raised and supported it in his *original* federal habeas petition, filed on February 18, 2004. *Ruiz v. Quarterman*, 504 F.3d 523, 524-25, 532 (5th Cir. 2007); *see also* Orig. Fed. Pet., D.E. 18. With the exception of three exhibits,[2] none of the twenty-eight exhibits that Ruiz filed on October 1, 2010, were included with his original habeas corpus petition. *See* App. to Orig. Fed. Pet., D.E. 19, *passim*. Consequently—whether the Court chooses to review the merits of Ruiz's claim de novo or under the Anti-Terrorism and Effective Death Penalty Act of 1996's (AEDPA's) deferential standard[3]—these

---

[1] The Director does not object to Ruiz's exhibits 15-17, which are, respectively, copies of Dr. Harry Munsinger's report; a transcript of attorney Donald J. Mach's state habeas hearing testimony; and Mach's affidavit, dated January 29, 2004.

[2] *See supra* note 1.

[3] After inviting briefing from the parties regarding the appropriate standard of review following remand, the Court issued a Revised Scheduling Order. D.E. 64. Therein, the Court stated its intention to review the merits of Ruiz's claim under both standards, citing ambiguity in the Fifth Circuit's remand order. *Id.* at 3-4. The Director respectfully maintains his position that the Fifth Circuit clearly determined—as Ruiz himself argued—that the CCA adjudicated Ruiz's claim on the merits. *Ruiz v. Quarterman*, 504 F.3d 523, 531 (5th Cir. 2007) (stating that, in regard

exhibits are not properly before the Court and should be excluded from consideration.

It is particularly significant that Ruiz never presented Exhibits 1-14 and Exhibits 18-27 to the state courts when he filed his third state habeas application, raising the ineffective-assistance claim that is now at issue in his upcoming evidentiary hearing. *See* D.E. 40-2, at 30-95. Thus, when the Texas Court of Criminal Appeals (CCA) denied the merits of Ruiz's claim, *see Ruiz*, 504 F.3d at 531 (finding that "Texas has now had an opportunity to review the claim and *did so on the merits*.") (emphasis added), it did not have the benefit of these exhibits. The relevant inquiry under AEDPA[4] is whether the CCA's adjudication of Ruiz's claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

to Ruiz's third state habeas application, Texas had enjoyed an opportunity to review Ruiz's present claim and "did so on the merits.") (emphasis added). Having made and won the argument that the CCA adjudicated his claim on the merits, Ruiz must now take "the bitter with the sweet." *Cf. Tull v. United States*, 481 U.S. 412, 428 (1987) (Scalia, J. concurring in part and dissenting in part) ("Having chosen to proceed in civil fashion [rather than to initiate a criminal matter], with the advantages which that [the civil] mode entails, it seems to me the Government must take the bitter with the sweet."). The Director therefore respectfully adheres to his position that the Court should apply AEDPA's deferential standard of review to Ruiz's claim on remand.

[4]     *See supra* note 3.

presented in the State court proceeding." 28 U.S.C. § 2254(d); *(Terry) Williams v. Taylor,* 529 U.S. 362, 413 (2000); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (noting that the district court should apply this deferential standard of review even where the CCA denied a state habeas writ without explanation). Ruiz is not now entitled to alter the deficient evidentiary posture of his claim. *See (Michael Wayne) Williams v. Taylor*, 529 U.S. 420, 439-40 (2000) (concluding that AEDPA barred the petitioner from further factual development of *Brady* claim where he had notice of the factual basis of the claim at the time of state habeas proceedings but failed to develop the evidence); *Livingston v. Johnson*, 107 F.3d 297, 306 n.7 (5th Cir. 1997) (holding that the petitioner could not rely on evidentiary proof that he did not present to the state courts). The question is whether Ruiz has met his burden of demonstrating that the state court's rejection of his claim conflicted with clearly established federal law as determined by the Supreme Court or resulted from "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Ruiz cannot rely on evidence not presented in the State court proceeding.

II. Specific Objections To Ruiz's Exhibits 1-14 And 18-27

   A. The Director objects to Ruiz's Exhibits 7-12 (records pertaining to Paul Rangel's criminal history) because they are irrelevant and, alternatively, lack any probative value.

The Director objects to consideration of Exhibits 7-12, which concern Paul Rangel's criminal history. D.E. 117-7 -117-12. Although the Director does not challenge the records' authenticity, he objects to each of these exhibits on the grounds that they are not relevant to the issues before the Court, and therefore inadmissible under Federal Rule of Evidence 402 (Rule 402). Alternatively, should the Court find that these exhibits possess some minimal relevance, the Director urges the Court to exclude them under Federal Rule of Evidence 403 (Rule 403), as their probative value is far outweighed by the countervailing considerations enunciated in that rule.

The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which is not relevant is inadmissible. Fed. R. Evid. 402. Further, even relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

As the Court has explained, its focus throughout the evidentiary hearing will be on the performance of Ruiz's trial counsel. Specifically, the Court will focus on:

> (1) precisely what information [Ruiz's] trial counsel actually possessed at the time of the punishment phase of [Ruiz's] capital murder trial regarding [Ruiz's] allegedly abused and neglected childhood, [Ruiz's] history of substance abuse, and other potentially mitigating information about [Ruiz's] background, (2) the existence at the time of [Ruiz's] trial of *additional* potentially mitigating evidence concerning [Ruiz's] background, (3) the steps [Ruiz's] trial counsel and investigator took to investigate [Ruiz's] background in the search for potentially mitigating evidence, and (4) the reasons why [Ruiz's] trial counsel made the strategic decisions they did at the punishment phase of [Ruiz's] capital murder trial, including why they chose not to present Dr. [Harry] Munsinger as a witness at [Ruiz's] trial.

D.E. 120, at 2 (emphasis in original).

Presumably, Ruiz will attempt to use the records reflected in Exhibits 7-12 to prove a fact, i.e., that Paul Rangel, Ruiz's stepfather, has a criminal history involving drugs and alcohol. But Rangel's criminal record has no bearing on Ruiz's moral culpability for Theresa Rodriguez's murder, and therefore the records do not represent mitigating evidence. *See Wiggins v. Smith*, 539 U.S. 510, 535 (2003) (emphasizing that relevant evidence is evidence relevant to the *defendant's* moral culpability). Accordingly, none of Exhibits 7-12 are "relevant"

under Rule 401. And because they are irrelevant to the issues before the Court, Rule 402 precludes their admission and consideration by this Court.

The exhibits are irrelevant for other reasons as well. By Ruiz's own account, his mother, Maria Rangel, did not meet Rangel until 1983 and did not marry him until 1985. App. to Orig. Fed. Pet., D.E. 19, Ex. I (Maria Rangel Aff.), at 4-5. Therefore, Rangel did not become a presence in Ruiz's life until 1983, at the very earliest. But an examination of Exhibits 7, 8, and 12 reveal that Rangel's conduct alleged therein occurred in 1975 (Exhibits 7 and 8) and 1981 (Exhibit 12), well before Ruiz's mother even met Rangel. *See* D.E. 117-7, at 2; D.E. 117-8, at 5; D.E. 117-12, at 2. Rangel's conduct occurring before he was a presence in Ruiz's life can have no bearing whatsoever to the issue of Ruiz's moral culpability. Further, as with Exhibit 12, Rangel's conduct alleged in Exhibits 9 and 10 did not result in a conviction, but was dismissed for insufficient evidence. *See* D.E. 117-9, at 6; D.E. 117-10, at 2; D.E. 117-12, at 4. The probative value of these exhibits is therefore nil. Further, Exhibit 11 concerns Rangel's 2003 felony conviction for driving while intoxicated (DWI)—an offense which he committed in 2002, eight years *after* Ruiz was tried and convicted for Theresa Rodriguez's capital murder. D.E. 11, at 2. Certainly, Rangel's conduct after Ruiz committed capital murder can have no bearing on Ruiz's culpability for his crime and therefore is not mitigating evidence.

Further, the judgment shows that Rangel committed the two predicate DWI offenses in 1984, *before* Rangel married Ruiz's mother, and in 1996, two years *after* Ruiz's capital murder conviction. As noted previously, Rangel's conduct before he was a presence in Ruiz's life can have no relevance to Ruiz's moral culpability for Rodriguez's capital murder. Moreover, because Rangel's felony DWI offense occurred after Ruiz's trial, an investigation launched by counsel before trial could not have revealed it.

In addition, the portions of Exhibits 7 and 8 containing police reports are hearsay. The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay must meet an exception to the general prohibition against consideration of hearsay to be admissible. Fed. R. Evid. 803. The police reports contained in Exhibits 7 and 8 are hearsay which do meet any exception to the general prohibition against hearsay and therefore are inadmissible. *See United States v. Lopez-Moreno*, 420 F.3d 420, 437 (5th Cir. 2005) (noting that police reports are generally excludable as hearsay).

In the event the Court finds that Rangel's criminal records are somehow relevant, the Director nonetheless asserts that it should exclude the exhibits. Their minimal probative value is substantially outweighed by the danger of

confusion of the issues and by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

> B. **The Director objects to Ruiz's Exhibit 14 (Maria Rangel's Center for Health Care Services Medical Records) because it lacks relevancy.**

Although the Director does not question the exhibit's authenticity, he objects to it on the grounds that it is not relevant to the issues before the Court, and therefore inadmissible under Rule 402. Alternatively, should the Court find that the exhibit is relevant, the Director urges the Court to exclude it under Rule 403.

Presumably, Ruiz will attempt to use this exhibit to prove a fact, i.e., that Maria Rangel was sexually abused as a child and experienced psychiatric problems while Ruiz was growing up. But as with Rangel's criminal records discussed above, Mrs. Rangel's psychiatric history and purported experience of sexual abuse has no bearing on *Ruiz's* moral culpability for Theresa Rodriguez's murder, and therefore Exhibit 14 is not relevant and should be excluded. *See Wiggins*, 539 U.S. at 535. Further, the psychiatric evaluation the exhibit reflects occurred on July 29, 2004, ten years after Ruiz's trial and conviction. Because the records did not exist at the time of Ruiz's trial, the exhibit does not represent a document that trial counsel could have discovered upon investigation. The

issue is what mitigating evidence existed at the time of Ruiz's trial. A document created after Ruiz's trial necessarily cannot fall within this category.

### C. The Director objects to Ruiz's Exhibit 18 (State Bar of Texas Disciplinary Records regarding trial counsel Donald J. Mach), as these records are not relevant to the issues under consideration.

Presumably, Ruiz seeks to introduce trial counsel's disciplinary record to prove that, because the Disciplinary Committee found that Mach acted improperly in one or more matters, he therefore must have acted improperly in Ruiz's case. But Mach's disciplinary history, which resulted from actions he took regarding other clients and after representing Ruiz for capital murder,[5] is simply not relevant to the proceedings at bar; it has "no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The question is whether Mach rendered *constitutionally ineffective assistance* in Ruiz's case, and not whether Mach violated a state bar disciplinary

---

[5] Ruiz was tried and convicted of capital murder in January 1995. But an examination of Exhibit 18 shows the following. First, Mach received a public reprimand in 1998 because, on October 21, 1994, he deposited a client's cashier's check into his IOLTA account. D.E. 117-18, at 4, para. 3. A dispute arose "thereafter"—the date is unspecified—concerning ownership of the cashier's check. *Id.*. The Disciplinary Committee issued a public reprimand because it determined Mach had not kept the funds separate in his trust account until the dispute was resolved. *Id.* The second matter involved a commingling of funds in July 1995, again, after Ruiz's trial. *Id.* at 7. The third matter concerned conduct occurring after September 1996. *Id.* at 15. The final matter involved Mach's failure, after September 30, 2001, to make all scheduled restitution payments to the first complainant. *Id.* at 27-28.

rule.  Further, the fact that Mach has been disciplined regarding a separate matter does not make him per se ineffective in Ruiz's case; the Fifth Circuit has declined to apply a per se ineffectiveness rule in similar situations.  *Cf. Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985) (attorney's alleged intoxication not determinative of ineffectiveness issue, which instead turns on whether "counsel's performance was deficient and whether that deficiency prejudiced the defendant."); *see also Ives v. Boone*, 101 Fed. Appx. 274 (10th Cir. 2004) ("Given [*Strickland v. Washington's*] instructions, we are not free to grant Mr. Ives habeas relief simply because his appellate counsel was disciplined by the Oklahoma State Bar.").  The Court should find Exhibit 18 irrelevant and therefore inadmissible. Fed. R. Evid. 402. Alternatively, should the Court find the evidence of Mach's disciplinary history relevant, it should nonetheless exclude it because its minimal probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

D. **The Director objects to Ruiz's Exhibits 19-27 (ABA[6] and NLADA[7] Standards; NACDL[8] articles) on the grounds that they are irrelevant.**

As Exhibit 19, Ruiz has submitted a copy of the American Bar Association's 1989 Standards for the Appointment and Performance of Counsel in Death Penalty Cases (ABA Standards). D.E. 117-19. As Exhibit 20, he has submitted the National Legal Aid and Defenders' Association's 1988 Standards for the Performance of Counsel in Death Penalty Cases (NLADA Standards). D.E. 117-20. Finally, as Exhibits 21-27, he has submitted a series of articles published in The Champion, a journal published by the National Association of Criminal Defense Lawyers (NACDL). D.E. 117-21-117-27. Presumably, Ruiz seeks to use these exhibits attempt to show that trial counsel did not strictly adhere to the procedures outlined in the ABA and NLADA Standards or the "best practices" advocated by NACDL—and by extension, that trial counsel was therefore constitutionally ineffective. But as discussed below, none of these documents is relevant to the issues before the Court. It should accordingly exclude them from consideration pursuant to Rule 402.

Regarding his claims of failure to investigate and present evidence, Ruiz

---

[6] American Bar Association

[7] National Legal Aid and Defenders' Association

[8] National Association of Criminal Defense Lawyers

has a high burden of proof. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 691; *Moore v. Johnson*, 194 F.3d 586, 616 (5th Cir. 1999). However, counsel is not required to pursue every path until it bears fruit or until all conceivable hope withers. *Moore*, 194 F.3d at 616. When assessing the reasonableness of an attorney's investigation, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Id.*; *see also Gray v. Lucas*, 677 F.2d at 1093; *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *United States v. Green*, 882 F. 2d 999, 1001 (5th Cir. 1989).

The ABA and NLADA Standards are not relevant to whether a defense attorney rendered constitutionally effective assistance at the punishment phase of trial, Fed. Writ Pet., D.E. 17, at 8-10. The Supreme Court has soundly rejected the notion that the ABA's guidelines or standards promulgated by other organizations are an "inexorable command with which all capital defense counsel

must fully comply" to be constitutionally effective. *See Bobby v. Van Hook*, 130 S. Ct. 13, 17 (Nov. 9, 2009) (per curiam) (internal quotation omitted). *Strickland*, it noted, "stressed . . . that 'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition." *Id*. The Court emphasized that the same was true of requirements imposed by the states: "[T]he Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Id*. Justice Alito, in a concurring opinion, went further:

> I join the Court's *per curiam* opinion but emphasize my understanding that the opinion in no way suggests that the American Bar Association's Guidelines . . . have special relevance in determining whether an attorney's performance meets the standard required by the Sixth Amendment. The ABA is a venerable institution with a history of service to the bar, but it is, after all, a private group with limited membership. The views of the association's members, not to mention the views of the members of the advisory committee that formulated the [Guidelines], do not necessarily reflect the views of the American bar as a whole. It is the responsibility of the courts to determine the nature of the work that a defense attorney must do in a capital case in order to meet the obligations imposed by the Constitution, and I see no reason why the ABA Guidelines should be given a privileged position in making that determination.

*Id*. at 20 (Alito, J., concurring). This same reasoning logically extends to NACDL articles advocating best practices for defense counsel to employ in death penalty cases. In short, the critical determination is simply whether counsel's choices were "objectively reasonable," *id*. at 17, and not whether counsel's choices

conformed to the guidelines promulgated by a particular organization.

Under these circumstances, the Court should exclude these exhibits pursuant to Rule 402. Alternatively, should the Court find the exhibits relevant, it should nonetheless exclude them because their minimal probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

## CONCLUSION

For the reasons above, the Director respectfully request that the Court exclude the above exhibits or portions thereof from consideration at the upcoming evidentiary hearing.

    Respectfully submitted,

    GREG ABBOTT
    Attorney General of Texas

    DANIEL T. HODGE
    First Assistant Attorney General

    ERIC J. R. NICHOLS
    Deputy Attorney General
      for Criminal Justice

    EDWARD L. MARSHALL
    Chief, Postconviction Litigation Division

    s/ Leslie K. Kuykendall
    LESLIE K. KUYKENDALL
    Assistant Attorney General

Postconviction Litigation Division
State Bar No. 24029673

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1400
Telecopier: (512) 936-1280
Email: Leslie.Kuykendall@oag.state.tx.us

ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I certify that a copy of this pleading was electronically served on Petitioner's counsel on October 13, 2010.

Kathryn M. Kase
Texas Defender Service
1927 Blodgett
Houston, TX 77004
(713) 222-7788
Fax (713) 222-0260
Email: kmkase@texasdefender.org

and

Chris K. Gober
Chris K. Gober, Attorney at Law, P.C.
424 E. Nueva Street
San Antonio, TX 78205
(210) 224-5811
Fax: (210) 224-5890
Email: chriskgober@yahoo.com

s/Leslie K. Kuykendall
LESLIE K. KUYKENDALL
Assistant Attorney General