IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ROLANDO RUIZ,** | § | |
| TDCJ No. 999145 | § | |
| Petitioner, | § | |
| | § | |
| -VS- | § | CIVIL NO. SA-03-CA-303-OG |
| | § | |
| | § | *DEATH PENALTY CASE* |
| | § | |
| **RICK THALER,** Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## PETITIONER ROLANDO RUIZ'S RESPONSE TO RESPONDENT'S OBJECTIONS TO EXHIBITS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ORLANDO GARCIA:

Respondent has objected to Petitioner Rolando Ruiz's Exhibits 1-14 and 18-27, arguing that this Court may not consider these exhibits for various reasons. For the reasons discussed below, Petitioner's exhibits are admissible and may be considered by this Court. However, a determination regarding the relevance of many of these exhibits prior to the November 2 evidentiary hearing would be premature, as counsel intends to present these exhibits in conjunction with testimony that will illuminate their relevance.

**I.      Respondent's objections to the relevance of Exhibits 7-12 and 14 are premature, as these matters will be addressed at the upcoming evidentiary hearing.**

Respondent's objections with regards to relevancy of exhibits presented by Mr. Ruiz are premature and pertain to matters that will be addressed at the upcoming evidentiary hearing. Relevance is a contextual determination related to all other inferences presented and raised at the

1

hearing.   At this hearing, Mr. Ruiz plans to present these exhibits in conjunction with testimony that will establish how they pertain to his moral culpability for the underlying crime.   For example, in addition to other testimony, Mr. Ruiz anticipates that the testimony of Dr. Seth Silverman will demonstrate how Mr. Ruiz's history of exposure to violence, instability and substance abuse shaped his worldview, contributed to his own substance abuse, and ultimately lessened  his moral culpability.  By objecting to Mr. Ruiz's exhibits on relevancy grounds prior to the hearing, Respondent has incorrectly assumed the purpose for which several exhibits have been presented.  While discussed briefly below, the purpose and relevance of many of Mr. Ruiz's exhibits are matters best addressed as they are presented at the evidentiary hearing.   It would be premature for this Court to make determinations regarding the relevancy of Petitioner's exhibits in a vacuum, prior to the upcoming evidentiary hearing.

Further, Mr. Ruiz wishes to call to the Court's attention that Respondent has not objected to any of Petitioner's exhibits on grounds of authenticity.

## II.    This Court may consider evidence not presented in Mr. Ruiz's State Habeas proceeding.

Respondent has argued that this Court may not consider any evidence not presented in the State court proceeding. *See* Respondent Thaler's Objections to Petitioner's Exhibits With Brief in Support, Docket Entry 123, at 4.  Although Respondent's reasoning is not entirely clear, Respondent asserts that  28 U.S.C. Sec. 2254(d) precludes this Court from considering any evidence not presented in the State court proceeding[1]. *Id.* This argument fails for a number of reasons.

First, 28 U.S.C. Sec. 2254(d) is not the proper framework for determining the admissibility of evidence not presented to the State court. The Fifth Circuit Court of Appeals has

---

[1] Mr. Ruiz maintains that he is entitled to *de novo* review, as addressed in his October 31, 2008 Advisory, Docket Entry 62.

held that "problems presented by evidence introduced for the first time in federal court in support of a federal habeas application are more accurately analyzed under the exhaustion rubric of Sec. 2254(b), not as issues of factual development under 2254(d)." *Lewis v. Quarterman*, 541 F.3d 280, 284 (5th Cir. 2008) (quoting *Dowthitt v. Johnson* 230 F.3d 733, 745 (5th Cir. 2000))(internal quotations omitted). Under 2254(b), "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appeared that the applicant has exhausted the remedies available in the courts of the State." The exhaustion requirement is satisfied if the substance of the claims have been fairly presented to the State court. 541 F.3d at 284, citing *Anderson v. Johnson*, 338 f3d 382, 386 (5th Cir. 2003). The exhaustion requirement is not satisfied if the petitioner "presents material additional evidentiary support to the federal court that was not presented to the state court. *Id.* Evidence is material if it fundamentally alters, not merely supplements, the claim presented in state court. *Id* at 285 (holding that Federal District Court erred in not considering an affidavit from a mental health expert, when the affidavit supplemented, rather than fundamentally altered the exhausted Mental Retardation claim).

Here, none of the exhibits presented by Mr. Ruiz fundamentally alter the claims of ineffective assistance he presented in state court. In Mr. Ruiz's most recent state habeas petition, he asserted that trial counsel was ineffective, in part, for failing to investigate and discover mitigating "evidence of childhood trauma, neglect, instability, and exposure to physical, verbal and substance abuse," Subsequent Application for Post-Conviction Relief, Exhibit 1-A of Docket Entry 40, at 4. In support of this assertion, Mr. Ruiz provided several affidavits from family members detailing this evidence. The Exhibits presented by Mr. Ruiz to which the Director has

objected merely supplement, and do not fundamentally alter his claims of ineffective assistance of counsel exhausted in State court.

Further, Respondent's argument that this court must limit its consideration to evidence presented in the State court proceeding is inconsistent with the purpose of the evidentiary hearing—which is:

> (1) whether petitioner's trial counsel rendered professionally deficient, i.e., objectively unreasonable, legal assistance in connection with the punishment phase of petitioner's capital murder trial by failing to adequately investigate, develop and present potentially mitigating evidence regarding petitioner's background and mental health, including whether petitioner's trial counsel active in an objectively reasonable manner in choosing not to present the testimony of Dr. Harry Munsinger during petitioner's capital murder trial, and (2) whether there is a reasonable probability that, but for any objectively unreasonable act or omission on the part of petitioner's trial counsel, the outcome of the punishment phase of petitioner's capital murder trial would have been different, i.e., whether petitioner would have received a life sentence.

(Order of Feb. 5, 2010, Docket Entry 94).  To limit this Court's consideration to evidence presented in Mr. Ruiz's state court proceeding would preclude an evidentiary hearing altogether.


### III.   Exhibits 7-12 and 14 Contain Relevant Mitigating Evidence.

Exhibits 7-12 and 14, related to Paul Rangel's criminal history and Maria Rangel's psychological history, are relevant mitigating evidence because they corroborate family history testimony to be elicited from witnesses and, therefore, they should not be excluded by this Court.

Respondent argues that Exhibits 7 to 12 , pertaining to Paul Rangel's criminal record, and Exhibit 14 containing information regarding Maria Rangel's psychological history are not relevant mitigating evidence because these matters have no bearing on Mr. Ruiz's moral culpability for the underlying crime. *See* DE 123 at 6, 9.  However, the assertion that Mr. Ruiz need establish a connection between or "nexus" between his exhibits and the commission of the

4

crime for which he was sentenced to death has been explicitly rejected by The Supreme Court. *See Tennard v. Dretke* 542 U.S. 274 (2004).

In order to satisfy the low threshold for relevant mitigating evidence established in *Tennard*, Mr. Ruiz "need not demonstrate that his family history is linked to his conduct; rather he need only show that it existed, and that a jury could find that a sentence other than death would be warranted" in light of it. *Cole v. Dretke,* 418 F.3d 494, 500 (5th Cir. 2005) (citing *Tennard v. Dretke*, 124 S.Ct. at 275.)

The figures who surrounded Mr. Ruiz when he was a child are extremely important in demonstrating his background, an explicit factor for the jury's consideration under the second special issue in Mr. Ruiz's capital sentencing. The character, criminal history and habitual substance abuse of Mr. Rangel, as well as his mother's troubled psychological history, including numerous suicide attempts, at least one of which Mr. Ruiz was witness to, are clearly part of his unstable background and are therefore relevant mitigating evidence.

It is well established that family history, including arrests of and substance abuse by family members constitutes relevant mitigating evidence. *See Cole v. Dretke*, 418 F.3d at 500 ("The Supreme Court itself has sanctioned evidence of family history and emotional disturbance as relevant mitigating evidence," referring to family history that included an alcoholic mother, and a father's arrest for an attempted robbery); *see also Eddings v.Oklathoma*, 455 U.S. 104, 115 (1982) ("Nor do we doubt that the evidence Eddings offered was relevant mitigating evidence... Evidence of a difficult family history and of emotional disturbance is typically introduced by defendants in mitigation," and holding  "troubled family history," including evidence that Petitioner's mother was an alcoholic and possibly a prostitute, constituted relevant mitigating evidence). The Director's attempt to resurrect its discredited *Penry* arguments through

5

objections to evidence presented in support of ineffective assistance of counsel claims should be rejected.

### IV.     Other Objections to Exhibits 7-12 and 14 are Unfounded.

Respondent argues that Exhibits 9 and 10, records from Mr. Rangel's criminal history, are of no probative value because they relate to cases that did not result in convictions. DE 123, at 7-8. Mr. Ruiz has not submitted these exhibits for the purpose of showing that a criminal conviction occurred. Rather, these exhibits, as well as any other exhibit pertaining to Mr. Rangel's criminal history are relevant to whether Mr. Rangel was an unstable guardian, prone to substance abuse and criminal activity. Even in the absence of a conviction, these records indicate instability and exposure to criminal activity in Mr. Ruiz's life because of Mr. Rangel's presence.[2] Moreover, the Fifth Circuit has indicated that evidence of merely an arrest can constitute relevant mitigating evidence. *Cole* 418 F.3d at 500 ("Family background" including evidence of arrest of Petitioner Cole's father for attempting to rob a liquor store met threshold for relevant mitigating evidence articulated by the *Tennard* Court.")

Respondent has objected to Exhibits 7, 8 and 12 because they pertain to incidents that occurred before Mr. Ruiz's mother met Mr. Rangel, and could therefore not have affected Mr. Ruiz. DE 123, at 7. However, these incidents are consistent with, and corroborate anticipated testimony and affidavits already presented to this Court indicating that Mr. Rangel frequently abused substances, had a criminal past when he met Mr. Riuz's mother, and was a drug dealer, all relevant information to Mr. Ruiz's background.

---

[2] Mr. Ruiz does not intend to use the evidence for impeachment. It is being used as substantive evidence regarding what the jury at Mr. Ruiz's capital sentencing could have heard related to Mr. Ruiz's background.

Respondent argues that this Court may not consider Exhibit 11, records from Mr. Rangel's 2002 Felony DWI conviction because it did not exist at the time of Mr. Ruiz's trial. DE 123, at 6. However, Respondent has again incorrectly assumed the purpose for which this exhibit was presented. Mr. Ruiz has not asserted that this document was available at the time of Mr. Ruiz trial, nor has Mr. Ruiz presented these records so the Court may consider Mr. Rangel's 2002 conviction. Rather, Mr. Ruiz wishes this Court consider the exhibit as evidence of Mr. Rangel's 1984 DWI arrest, therefore relevant to Mr. Ruiz's background as discussed above. It is worth noting that this conviction occurred in 1984, after Mr. Ruiz's mother had met Mr. Rangel and he had become a presence in Mr. Ruiz's life.

The police reports contained in Exhibits 7 and 8 are not hearsay. They are properly authenticated public records, which are admissible under Fed. R. Evid. 803(8). Because they are more than 20 years old and properly authenticated, they also have the status of ancient documents under Fed. R. Evid. 803(16) and also are admissible.

Exhibits 7 and 8 are relevant because they serve as evidence that was available to trial counsel at the time of Mr. Ruiz's capital trial. When offered for this purpose, it is irrelevant whether the events described in the police reports actually took place. Rather, it is only relevant that a jury may have considered the information contained with them to be mitigating and that this information was available to trial counsel at the time of Mr. Ruiz's capital murder trial. Because these reports are not being presented solely to prove the truth of the matter asserted, they do not constitute hearsay evidence.

Finally, even if Exhibits 7 and 8 were found to be hearsay, this Court should still admit them. The Supreme Court has held that the hearsay rule in capital sentencing proceedings should be relaxed or "not applied mechanistically to defeat the ends of justice." *Green v. Georgia*, 442

U.S. 95, 97 (1979), (quoting *Chamber v. Mississippi*, 410 U.S. 284, 302 (1973)) (internal quotations omitted). Thus, if Mr. Ruiz's trial counsel would have been entitled to present this evidence to his capital sentencing jury, then it must be admissible here as evidence of what evidence could have been before the jury had Mr. Ruiz's trial counsel conducted a reasonable sentencing investigation. Exclusion of evidence showing Mr. Rangel's substance abuse and criminal activity – which is inarguably a part of Mr. Ruiz's family background – would defeat the ends of justice and, therefore, this Court should admit these reports even if it determines they constitute hearsay.

Respondent has argued that this Court may not consider Exhibit 14, Maria Rangel's Center for Health Care Services Medical Records because they were not available to trial counsel at the time of Mr. Ruiz's trial. However, Mr. Ruiz has not presented these records for this purpose. Rather, these records corroborate affidavits already presented to this Court regarding Maria Rangel's psychiatric history. Moreover, the records corroborate anticipated testimony at the upcoming evidentiary regarding Ms. Rangel.

## V.    Donald Mach's Disciplinary Records Are Presented as 404(b) Material and Also for Impeachment.

Respondent has argued that Exhibit 18 is not relevant, as it does not relate to Mr. Mach's performance in Mr. Ruiz's capital trial. Mr. Mach's disciplinary records are admissible under Fed R. Evid. Rule 404(b), as intent and as absence of mistake or accident. Respondent is expected to argue that Mr. Mach made a "strategic decision" not to properly investigate Mr. Ruiz's punishment phase case and present Dr. Munsinger's report. Petitioner, therefore, seeks to show that Mr. Mach did not make a "strategic decision", but that merely failed to engage in the competent preparation and presentation of Mr. Ruiz's punishment phase case. Most importantly, these records provide the motivational context for Mr. Mach's anticipated testimony. Given his

disciplinary history, Mr. Mach is more likely to take measures to avoid being found ineffective in this proceeding.

Additionally, these records go to the credibility of Mr. Mach's own statements regarding his performance.  Rule 607 provides that a party may impeach the credibility of his or her own witness.  Fed. R. Evid. 607.  Rule 608(b) provides that the credibility of a witness may be attacked extrinsic evidence of specific instances of conduct if probative of untruthfulness.  Fed. R. Evid. 608(b).  Many of the facts in Mr. Mach's disciplinary records are relevant to his truthfulness and trustworthiness, including the grievance committee's findings that Mr. Mach failed to disburse settlement funds to medical providers, failed to provide lawfully demanded information, failed to respond to a subpoena, and failed to comply with the terms and provisions of the subpoena including testimony and requested information.  Exhibit 18, at 6.

## VI.    Exhibits 18-27, the ABA Guidelines and NLADA Standards, are Relevant because  They set out the Prevailing Professional Norms for Capital Defense Counsel when Mr. Ruiz's Punishment Case was Investigated and Presented.

Respondent argues that Exhibits 19-27 should be excluded because they are not relevant to whether trial counsel rendered ineffective assistance in light of *Bobby v. Van Hook*, 130 S. Ct. 13, 17 (2009).  In presenting this argument, Respondent ignores the long and widely held reliance on the ABA Guidelines and misrepresented the Supreme Court's holding in *Van Hook*.  Respondent also argues that the ABA Guidelines and NLADA Standards are not relevant to any issue before this Court.  However, these Guidelines and Standards, as long recognized by the Supreme Court are valuable guides in establishing the "prevailing professional norms" in place at the time of Mr. Ruiz's trial.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

It is Mr. Ruiz's burden in this proceeding to prove that trial counsel's performance fell below an objective standard of reasonableness.  466 U.S. 668.  The proper measure of attorney

performance is "reasonableness under prevailing professional norms." *Id.* at 694.  In order for Mr. Ruiz to prove that trial counsel's performance fell below those prevailing professional norms, he must first establish what those norms are.  The ABA guidelines and similar restatements have long been recognized by the Supreme Court as valuable guides regarding those standards.

In *Padilla v. Kentucky*, a decision post-dating *Van Hook*, the Supreme Court recently reiterated the value of the ABA Guidelines and similar restatements in determining  the prevailing professional norms of effective representation. "We have long recognized that [p]revailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable. Although they are only guides, and not inexorable commands, these standards may be valuable measures of the prevailing professional norms of effective representation..." *Padilla v. Kentucky*, 130 S.Ct. 1473, 1481 (2010) (citing *Bobby* v. *Van Hook* 130 S. Ct. 13 (2009) ); *Florida* v. *Nixon* , 543 U. S. 175 , and n. 6 (2004); *Wiggins* v. *Smith,* 539     U. S.     510, 524 (2003); *Williams* v. *Taylor* , 529     U. S. 362, 396 (2000) (internal citations omitted).

The Supreme Court in no way strayed from this well established practice in *Van Hook*. The Court in Van Hook held that the Sixth Circuit Court of Appeals improperly relied upon a version of the ABA Guidelines published 18 years after the habeas petitioner's trial. "Judging counsel's conduct in the 1980's on the basis of these 2003 Guidelines—without even pausing to consider whether they reflected the prevailing professional practice at the time of the trial—was error." 130 S.Ct 13, 17. In the opinion, the Supreme Court gave no indication whatsoever that that ABA Guidelines are not a relevant guide.   In fact, the Supreme Court relied on the ABA Guidelines prevailing at the time of Van Hook's trial in evaluating trial counsel's performance.

130 S.Ct at 19 ( "The ABA Standards prevailing at the time called for Van Hook's counsel to cover several broad categories of mitigating evidence, which they did.")(internal citation omitted).  Significantly, the ABA Guidelines and NLADA Standards included as Exhibits here were published at the time of Van Hook's trial and – and this is why they were included.  The same is true of the articles from the National Association of Criminal Defense Lawyers' magazine, *The Champion*.  Thus, Exhibits 19-27 relevant guides to the prevailing professional norms for capital defense attorneys at the time of Mr. Ruiz's trial.

**VII.    Rule 403 Does Not Apply in this Proceeding to Respondent.**

Respondent misapprehends the focus of this proceeding by arguing that many of Petitioner's exhibits should be excluded under Rule 403, as their probative value is outweighed by the danger of "unfair prejudice confusion of the issues, or misleading the jury, or by considerations of undue delay, waste  of time, or needless presentation of cumulative evidence." DE 123, at 11, quoting  Fed. R. Evid. 403.  However, Respondent provides no basis for this assertion.  This hearing is being held before the Court, not before a jury.  It is highly unlikely that this Court will be confused by the exhibits presented by Mr. Ruiz.

### Conclusion

For the reasons above, Mr. Ruiz respectfully requests that this Court overrule Respondent's objections, or in the alternative, postpone a decision until after the evidentiary hearing, when Mr. Ruiz will have the opportunity to demonstrate the relevance of his exhibits more fully.


Respectfully submitted,

11

Kathryn M. Kase
Texas Bar No 11104050
TEXAS DEFENDER SERVICE
1927 Blodgett St.
Houston TX 77004
TEL: (713) 222-7788
FAX: (713) 222-0260


Chris K. Gober
Attorney at Law
424 E. Nueva
San Antonio, Texas 78205
TEL: (210) 224-5811


## CERTIFICATE OF SERVICE

On October 19, 2010, I electronically filed the forgoing pleading with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. A "Notice of Electronic Filing" was sent to Jeremy Greenwell, attorney of record for Respondent Thaler, at his e-mail address: jeremy.greenwell@oag.state.tx.us.